Good morning, Your Honors. My name is Juan Laguna, and I have the privilege to represent Armando Soria Gonzalez today. Armando is the father of three children. They are ages 15, 11, and 7 years old. They are really thinking about the situation today. They are in school today. I don't mean to interrupt you, but we understand all that. That's not the issue today. The issue today is whether there was a mistake in denying the motion to reopen. Yes, Your Honor. I believe there is a mistake because of inconsistency, Your Honor. If I will address the Court to page 38 of the administrative record, the BIA said, we agree with the respondent that because the smuggling activity occurred more than five years ago, he is eligible for voluntary departure. Voluntary departure is an immigration relief. NACARA is also an immigration relief. And the elemental issue is the seven years of good moral character. Mr. Soria Gonzalez's contention here is that seven years have elapsed from the alleged smuggling activity that took place on or around February of 2011. Counsel, your seven years calculation requires that you get to the revised order by the BIA that corrected the word China and substituted the word Mexico. Is that correct? That is correct, Your Honor. And if you can't get to that order as the final and dispositive order, you don't have seven years. I would say yes, Your Honor, in normal circumstances, by analogy. Why isn't that just a clerical clarification? You had a previous order that ordered your client out of the country, and there was a simple mistake there, and they simply reissued the order. It is true, Your Honor. Why isn't the prior order the operative one? It is a very good question, Your Honor. And I would say simply that the order was not final. There is a lot of mistake. For whatever reason, Your Honor, the finding facts process didn't take place extensively, let's say. Did the BIA correct that order on its own motion? It did, Your Honor. Okay. Nobody else called that to their attention that we know of. Well, yes, Your Honor, I would say off the record that counsel from the government called my office and said if it was okay for the BIA to reissue the order, and I said, of course. I mean, it's a clerical error. So, of course, I wouldn't contend anything or take advantage of the situation. I don't remember the name of the attorney that I talked to, but I said, yes, I mean, no problem with that. The thing is that it brought me to really give Armando the opportunity to say, yes, I smuggled my father, and I smuggled my brother-in-law. It didn't happen. Yes, he has been supporting his family for the last 22 years, sending money to Mexico. That's true. And we can find out Judge Gemba didn't care. He granted the case twice. And when the BIA, based on four or five lines of testimony under such a pressure that you wouldn't believe, I was there in the 17S courtroom, and Mr. Kuhn was the attorney for the government. He's a very experienced attorney. I wasn't at the time. I need to confess that. Armando was really tense, and he didn't understand anything, the interpreter, the situation. Well, I don't quite understand what you're driving at. I mean, it seems to me, reading all the paperwork, your client lost because he was convicted of alien smuggling? It is incorrect, Your Honor. Fortunately, that assertion is incorrect. But we're way down the road on that. We have a finding of fact that's burned into the record, that he paid money to have his family illegally brought into the United States. That assertion, Your Honor, it is in the record, but there is no conviction, and it is based just in three or four lines of the testimony. But we're way down the road from that, though. That was the finding. You're asking to reopen, then, on that finding? Well, it's part of the reopening, Your Honor, yes, because I want to know more. As a matter of fact, the judge who heard that testimony didn't pay attention to that. But, counsel, when the BIA issued the order that had the word China in it, which would have been a final order for your client and would have been outside of the seven years, you would not have qualified for the seven years under your theory. You didn't appeal that one to the Ninth Circuit. Right. And you didn't seek reconsideration at the BIA. Yes, Your Honor. So for all purposes, the case was over at that point. At this point, it is simply the fortuity that the BIA made a clerical mistake in inserting the word China instead of Mexico, which DHS apparently caught. They corrected it, and then you noticed that he was past the seven years and then filed a motion for reconsideration. Correct, Your Honor. It was your right. And a motion for reconsideration generally has a higher standard than a motion to reopen. I agree. You have to have new facts. Correct. And the only new fact you had was he was now past the seven years. We thought correct. You are correct. The matter of Coelho makes it clear that that doesn't get you anywhere unless you've got some other evidence to work with. It is true. You've read the matter of Coelho, I'm sure. Of course, Your Honor. It is true. That's not enough. I understand, and I agree with the court. So how can we say that's an abuse of discretion? Your Honor, there is a difference of very few months between both decisions. The one that was with the clerical error to China and the one that was with the cleric. If we give you the benefit of falling within the time period, you still have this problem that there's nothing to support it other than the passage of time. As Coelho points out, that's not good enough because they can use stuff that happened outside of the time period. And here I read this as simply saying, you know, you're not going to win because you're an alien smuggler. Correct. Yes, Your Honor. You're trying to reopen something that's closed because you didn't bother to petition for review from the earlier finding of fact that your client was responsible for alien smuggling. I wouldn't agree with that, Your Honor. I wouldn't agree with that. I respect the comment, but I am not in agreement with that assertion. What I would say, Your Honor, is the term, the proper term is the statutory bar expired. There are seven years, and there is no final order. Therefore, please consider the effects of the removal and allow the judge to assess if this person deserves NACARA because seven years have passed. In any event, it was a clerical error. I filed a motion to reopen within the 90 days. The BIA, in its decision, is saying, okay, I grant you voluntary departure because you didn't do anything wrong in the five years preceding this decision. So why not, why don't we give Armando the benefit of the doubt? Counselor. Yes, Your Honor. Did you notice the mistake when you saw the original order? I noticed the mistake. Yes, I don't remember the time in which I noticed the mistake, but I did notice the mistake, yes. You didn't call it to anybody's attention. I didn't call it to anybody's attention. I was going to file a motion to reopen, Your Honor, within the 90 days, and I would address that at that time. But then the decision was reissued, and therefore I filed a motion to reopen within 90 days after the decision was reissued. You mean after the BIA corrected its clerical error. Correct, after the reissuance of the decision. Yes. Yes, Your Honor. But I'd like to go back, if I may, Your Honor, to the smuggling conviction. There is no such a thing, and Your Honor mentioned that it's already on the record. There is no conviction. It was a finding that he paid money for alien smuggling. Yes, Your Honor. He doesn't have a criminal conviction. He does not. But it was a finding of fact that he engaged in that behavior. Reached by the BIA, Your Honor, without knowing Armando, without looking at him, and after Judge Gambat said I hate to beat a dead horse, but you're not getting it. I don't mean that as a criticism. No, no, no. You had that the first time around, and you didn't petition for review from that finding. Now you're using this as a backdoor to try to get in again to reopen something that as a matter of law is closed. You can't get in the backdoor to reexamine that. You should have done that the first time around with a petition for review. And I believe there was a petition for review against the denial of the appeal. There are two petitions. But you've been foreclosed all along. Now you're trying to reopen that previous proceeding. If I may clarify, and thank you for bringing that out, the first time that the BIA denied the appeal, I filed a petition for review. And what happened? It was consolidated after I filed a second petition for review because the motion to reopen was denied. So the court decided to consolidate both matters. And that's why we are here today. So there is a petition for review file saying the BIA said that my client is a smuggler. When there is no finding of such, the BIA based its decision in the transcript. The question didn't see the person, didn't allow the judge to. What did the IJ say? The IJ said that such smuggling activity wouldn't preclude Armando from getting NACARA. But he did say that there was smuggling activity. Well, I can read the decision. I don't think that those words were used initially because he never focused on that. Judge Genbach never focused on this smuggling activity. He focused on the credibility. He focused on the potential misbehavior. Sustained the appeal of the Department of Homeland Security, vacated the immigration judge's decision. We found unable to establish a requisite good moral character for special rule cancellation. Because based on his payment to smugglers to bring family members into the United States. That's what the BIA decided. Correct. But the judge never found out more about it. The judge went with that statement by the BIA. Pursuant to our remand, the immigration judge issued his decision, finding that the respondent paid smugglers to bring in members of his family, including his brother-in-law. Accordingly, the immigration judge held he was ineligible for cancellation of removal. The immigration judge made a finding that he paid money to bring in illegal aliens. May I ask, Your Honor, what page are you referring to? Well, I'm referring to a document that stated February 21st. Yes, yes. That's the amended order, Your Honor. I'm not persuaded by the respondent's argument that payment after the fact does not constitute assistance in the smuggling. Yes, Your Honor. Do we agree that because the smuggling activity and then, I mean, there's just findings of smuggling activity. We need to go to the initial decision of the BIA, Your Honor, and the initial decision of the judge. The BIA, when the BIA decides the appeal, by the government, by the way, because there are two times that the immigration judge granted NACADA, without consideration or with consideration of the smuggling. Well, the BIA did what the BIA frequently does. Which is, Your Honor? Rule against you. It's ugly. It grants you. Why don't we have the opportunity to go back and make sure that this person is a smuggler? I mean, immigration. You didn't take an appeal from that. You had the opportunity in October of 2007 to take an appeal from a final order of the BIA. You didn't do that. Your Honor, the final order of the BIA. If the BIA hadn't, if the BIA had put Mexico in that original order in October, you're just done. And you didn't, and the only thing that gave you the opportunity to reopen this was the fact that they made a clerical mistake and put the wrong country in there. They correct that a couple of months later, and you sought to, you sought for reconsideration on that basis. Yes, Your Honor. Let me, because there are, there are three decisions by the BIA. And I know, and I appreciate. You didn't take, you didn't take an appeal from the last order. That's where you have to take your appeal, or else that order becomes final. The appeal was, okay, I think I understand, Your Honor. What you're saying, if I understand correctly, is once the BIA issued the wrong, quote unquote, country order, you should have filed a motion to, I mean, a petition for review. That's right. Whether it said China or Mexico is sort of irrelevant, because this was a judgment on the merits. And if you wanted to challenge the final order of the BIA, you had to do it at that time. And you didn't do it. Did you? I believe I did, Your Honor. I believe I did, because this is the decision on the motion to reopen. The February 2008 order was an issue, was issued on the motion to reopen, not on the final order of the judge. That's right. The final order was first issued in October of 2007. I believe you are correct, Your Honor. Okay. You did not take, you did not file a petition for review in this court from that order. Well, probably I'm confused right now. I filed a petition for review for the final order of the BIA, number one. And number two, I filed a petition for review against the motion to reopen denial. There are two petitions for review in this court. There are two cases which are consolidated. I never stopped appealing the wrong decision by the BIA. Okay. I see that you have two docket numbers. Yes, Your Honor. Okay. So you did take a petition for review from the October decision? If I may take, because I am surprised by this focus right now. I mean, I am taking off dates. I didn't know that we were going to be discussing this because the appeals had been filed. And I need to check dates. The October 2007 is page 41 in the record. And it is a decision based on my motion to reopen, Your Honor. It's not the substantive first appeal. That's a very prior decision that took place. Counsel, you're way over your time. Here's what I'm going to do. I'm going to give you a minute to respond to us, and you can look while we hear from the government. Perhaps the government can shed some light on this. So why don't you go ahead and have a seat. I will give you a minute to look through the record so we can get this straightened out. Let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. My name is Ashley Martin. I represent the government in this matter, as well as on the case that is next on the docket before the Court today, Paula Palacios v. Holder. I'd like to start by discussing the motion to reopen. What's before us? We hear that there are multiple things before us, a motion to reopen and a petition for review from the original decision granting the government's appeal, concluding that the petitioner was an alien smuggler. What's before us? How many cases? What's before us? It's the government's understanding that there are, in effect, two final board orders before the Court today. The first would be the board's denial of the motion to reopen. That's the February 2008. That is the October 15, 2008 order denying reopening? Yes. That would be the first board decision before the Court today. Right. That's the decision denying the reopening of the February 2008 final order, which gives an involuntary departure to Mexico. Yes, Your Honor. That is my understanding. The other decision on review before the Court today, because this is a consolidated case, is, in effect, the board's February 21, 2008 order. We have a strange situation here from my point of view because the board entered an administratively final decision on the application for cancellation of removal in October of 2007. Then, in February of 2008, the Court recognizes that there is just a clerical error in its administratively final decision, reopens the removal proceedings on its own motion, corrects the clerical error, and makes clear that what it's doing is simply amending the final decision that it issued. So we did not have a timely petition for review from the October 2007 decision, the one that said China? Your Honor, it's the government's understanding that there was a timely petition for review of the October 2007 decision. Is that docketed before us, handled by another panel? What happened to it? It's my understanding that that was properly docketed and is before the Court today because the petitions for review were consolidated. There's a petition for review in case number 07-74464. Okay. And that is the petition for review of the October 2007 order? Yes, Your Honor. Okay. And do we have one from the then the February 2008 order is actually the petition when the board denies it in October of 2008? I'm sorry. I'm not sure I understood the question. Well, the board reissues its decision. It reissues its October 2007 decision in February 2008. Yes. It then denies the petition for reconsideration. I'm sorry, to reopen. Yes. In October of 2008. Is that correct? Yes, that's correct. And then it takes a petition from that. Yes, that's correct. So we do have sort of the merits of the question before us. It's the government's understanding that we do, yes. And that's how this matter is addressed in the brief. So it's the government's understanding that both the merits of the motion to reopen and the substantive merits of the October 2007 decision are before the court today. Okay. Is the board's operative decision the February decision or the October 2007 decision? Well, as the panel knows. Which is the final decision ordering him out of the country? The February 21, 2008 decision. Okay. Under BIA's rules, hasn't he satisfied a seven-year period? Not necessarily, Your Honor. Notably, at the February 27, 2003 hearing, Soraya Gonzalez testified that his parents came to the United States two years before. In February. Right. I'm aware of that. I'm just trying to get down what is the final order from the board. Because under the board's prior decisions as to how it calculates those time periods, it takes not from the notice to appear, the NTA, but the final decision of the board. If the final decision of the board is February 2007, then Mr. Gonzalez looks like under the board's own interpretation, not the Eight Circuits, but the board's own interpretation, that he has satisfied the seven-year period. He didn't necessarily satisfy the seven-year period as of February 21, 2008. And if you don't mind, I'll take a quick look at his testimony at the February 2003 hearing. As of February 27, 2003, he testified that two or three years ago, he paid a smuggler to bring his brother-in-law to the United States, and that two years ago he paid a smuggler to bring his parents to the United States. So he didn't give an exact month. Looking at his testimony in the light most favorable to him, that means that these smuggling activities occurred as early as February 27, 2000, in the case of the brother-in-law, and February 27, 2001, in the case of his parents. Thus, even considering that testimony in the light most favorable to him, as of the date of the board's February 21, 2008 decision, the door... That would make the smuggling of the parents who came first, right? Yes. Untimely. Well, what it shows is that, based on his testimony, it's... Actually, that would make both of them over seven years or better. Even as to the brother-in-law, until we have a precise finding as to when he smuggled his brother-in-law in February of 2001. There was no finding as to the precise date. Right, and it probably was irrelevant at the time because nobody was close to the seven-year period. Well, that's correct. But now that the board has reissued and you've told us that the final order, the February 2008 order, all of a sudden the precise date on which he smuggled his brother-in-law becomes relevant, doesn't it? Your Honor, I believe due to the importance of this issue, it may be best for there to be supplemental briefing on the issue. Do we need supplemental briefing or do we need to send this back to the BIA to straighten it all out? We appreciate your candor. Which do you think we should do? Is this something that we can resolve? I don't see that there's anything that the parties can provide us at this point that will resolve that question on this record. Your Honor, I think that the relevant issue here is, as you just noted, what is the board doing in its February 21, 2008 decision? And we really don't have a sort of self-conscious admission from the board as to what it was doing, did we? It doesn't look like the board ever thought about that seven-year period having run when it reissued the decision in February 2008. So maybe we need to get something from the board that says, this was just a clarification and it isn't really our final order, which would make a seven-year period untimely. Well, I believe what the board said in a footnote in that decision is that what it's doing is simply amending the October 2007 decision to correct the clerical error. Therefore, the board expressed its intent that, as far as the substance of it. But, again, the board doesn't appear to be aware that under its rules that the – it doesn't look like anybody looked at it to see when the – if he was eligible under the seven years under the board's own rules. But nobody really was thinking about that in February of 2008 when they issued that order. Well, no, there's no indication that anybody was thinking about that. However, it seems that what the board was thinking about was just simply amending a clerical order on an issue that it had already resolved. But might it be better to have the board do some thinking about that rather than have us think about it? I can assure you they'd appreciate it. Your Honor, the – if the court wishes the government to explore remands in this case, then I can take it to my supervisors and we can explore that. Well, let's go to the original. You can see there are two petitions before us. Let's go to the first petition. The board remanded it to the IJ. The IJ then found that the petitioner had engaged in alien smuggling. It comes up again and the board says, okay, that's the end of that. And that petition is under attack. And what's your view on that? Are you referring to the board's August 25, 2005 decision remanding to the immigration judge? No. I'm referring to what the board did after it came back from the immigration judge. And that's the subject of a petition for review, right? Yes, yes. Okay. What's – what about that? Are you here to support the board's decision? Yes, I am here to support the board's decision. All right. Do it. Do it. The board correctly found that any error it may have made by making factual findings in its August 25th – Corrected by the IJ's then subsequent fact finding. Yes. And that was correct. The board noted that what the argument was at the time that it rendered its October 2007 decision, which was then amended in February of 2008, the argument at that time was that Soria Gonzalez had been prejudiced by the board making factual findings in its August 2005 decision. However, the board correctly noted that that argument was moot. It had sent the case back to the immigration judge in its August 2005 decision. The immigration judge took a look at Soria Gonzalez's previous clear testimony that he had paid smugglers to bring relatives into the United States and said this testimony was clear. And I've considered his arguments that he's posed to us an emotion after remand. And I find that he hasn't persuaded me that his testimony was not clear on this point. So that becomes a finding of fact. That was a factual finding. And then that's taken back to the BIA, and the BIA said any error that we might have made by fact finding has been overtaken by what the IJ just did. Yes, that's correct. And you believe that's supported by substantial evidence that he was responsible for alien smuggling? Yes, it is supported by substantial evidence that would have supported that. His testimony at the February 27, 2003 merits hearing. Which was? Which was? How did your father-in-law come into, your father-in-law, or excuse me. How, okay, I'm looking at the wrong testimony. I apologize. He testified that his father came to the United States illegally and that he paid a smuggler to bring his father, along with his mother, into the United States. He also testified that he had brought an additional relative to the United States, his brother-in-law, and that on each occasion, both of the alien smuggling incidents, he paid a smuggler $2,000 to bring the relatives into the United States. This was his testimony when he was being questioned by the Department of Homeland Security attorney. He had the opportunity to further explore that testimony on redirect. But on redirect examination, he didn't contest or provide any other testimony that. . . Redirect by who? By his lawyer? By his attorney, yes. And he didn't provide any testimony that indicated that what he had really done was just sent his relatives money and they happened to decide to use that money to come to the United States. So his testimony is he paid smugglers? His clear testimony was that he paid smugglers. So that first petition for review that we have before us, you would say, is bulletproof? I would say, yeah. Well, the board's October 2007 decision, as well as the February 2008 decision, they're both bulletproof on that one. Okay, so then you get to the motion to reopen. Yes, that's correct. The motion to reopen, as far as I can tell, says only time has passed, now he's eligible. And your argument to the BIA was that that doesn't make any difference because if you read in Ray Coelho, the simple passage of time without more doesn't get you anywhere. So your argument is there was no abuse of discretion in denying the motion to remand and reopen? Yes, that's correct. The board acted well within its broad discretion to deny that motion to reopen. Does it make any difference if we remand? If we even assume there's seven years that he gets the credit of that, what difference does it make? Because the board is allowed to consider out-of-the-time period evidence, and that's what appears that it did. In its order denying the motion to reopen? Right. Yes, I believe that the board looked at the procedural history of this matter. It looked at all the evidence of record. Is there any evidence that the board realized at that point that he had had seven years of good conduct in the United States? When it issued the February 2008? Yes, there is evidence of that. And I apologize for not... What's the evidence for that? In his motion to reopen before the board, Soraya Gonzalez argued, hey, by the time that you issued your amended February 21, 2008 decision, I had accrued seven years of good moral character in the United States. The board considered that whenever it was ruling on the motion to reopen. And it said, hey, you know, at the time that this application of cancellation of removal was first before us, you didn't have seven years of good moral character. The equivalent in your papers, in your argument. Yes. Respondent's motion to reopen argues that because of the passage of time, he's now statutorily eligible. And then the board says, but you say without more, that doesn't get you anywhere. And the board says, we agree with you. So the board did consider that. The board did consider it, and I apologize for not pointing that out earlier to the panel. And it's for that reason that a remand in this matter would be futile. Because the board has already considered this argument. It exercised its discretion in conformity with its precedent in Coelho to say that the mere passage of time, since our October 2007 decision, standing alone. There's always passage of time. There's always passage of time. There's got to be something more than just now there's more months between the alien smuggling and now. That's correct. And the board absolutely has the discretion to hold that that standing on its own is not enough to satisfy the heavy burden for reopening. I think that's why we began with the question of what's the final order here? Because if the final order is the February order, as opposed to the October 2007 order, then the seven years has already accrued. Possibly. It's not clear from the record. It's not crystal clear from his testimony at the merits hearing that the seven years would have accrued, as you noted earlier. And there certainly is a difference in the standard between the initial judgment by the BIA, which would be February 2008, and a motion to reopen, which has a very, very high standard and which we have very limited review of in this court. And, of course, the BIA treats it as a motion for reconsideration, rather than having looked in February of 2008 to say, wow, it looks like he's got the seven years, but we're not going to count it anyway or we're not going to consider it or there's other reasons for rejecting it. Well, you're correct, Your Honor, that the standards in those two different procedural postures are quite different. But at the same time, the board considered whether or not the proceedings in this matter should be reopened, based on the fact that time had passed, additional time had passed by the time it issued its February 2008 decision. And the board has already said that we don't think that's enough. And for that reason, the government believes that the board has already considered this issue and that a remand would be futile. Thank you, Ms. Martin. Mr. Laguna, I'll give you an additional minute for anything that you think the Court needs to hear. Thank you, Your Honor. Thank you very much, and thank you to Council, too, for clarifying the existence of the petition for review. Thank you also for clarifying the issue of the substantive petition for review. See, our inventory card kind of shuffled the deck on this and left it confusing. Yes, Your Honor. I think we finally know what we have in front of us. Correct. The only thing that I request from the Court today is to allow Armando Soria Gonzalez and his family to talk to a person and say, I am a person of good moral character. I did not smuggle my parents. I supported my parents. I held my brother-in-law with money. I want a judge to listen to that. And the BIA did not. Is he going to now say, I didn't pay anybody to smuggle? Perhaps, Your Honor, perhaps. I am not saying that he's not going to say it. I know he's not going to lie. That's for sure. But he's going to say the money that he sent to whom he paid, details were never, never given to this. I thought your argument was quite different. I thought your argument was, yes, I smuggled my parents and I smuggled my brother-in-law. I did it for family reasons. I did it in 2000 and 2007. But under NACARA, I have to show seven years. And since that time, I have been in the United States for seven years with a clean record and, therefore, I'm eligible under NACARA. It is my argument, absolutely, Your Honor. But that would simply confess the smuggling but just point out that it's more than seven years in the past. Given the conclusion of the BIA, Your Honor, the unfounded decision of the BIA that he's a smuggler, I would argue that. But if we can go to Your Honor's first petition, I would say give us the opportunity to explain if I am a smuggler or not. So in the first petition, give me the opportunity. In the second, I have more than seven years. And I think given the circumstances and the effect of the removal on Armando and his family, I would say at least that's what I'm begging the court to consider, just a remand. I am not asking for more for the BIA to remand it to the immigration judge and find out and then issue a clean decision that will satisfy the doubts. We cannot live without when we have three children with a sole provider, the father, with his own business for 22 years in Santa Ana, living 22 years. He bought the bakery to just say, based on this record, you have no hope. You have no chance. What are they going to do? Okay. Any further questions? Okay. Thank you, Mr. Laguna. We appreciate the arguments of both counsel in the case and the clarifications you've offered to the court. Thank you very much. Thank you, Your Honor. The case is submitted. Thank you. The next case on the calendar is Palacios v. Holder.
judges: Duffy, Trott, Bybee